Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6217 | **DATE** | 11/1/2002 |
| **CASE TITLE** | Tax Track Syst vs. New Investor World | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, Defendant's Third Rule 37 Motion for Sanctions is granted in part and denied in part. Plaintiff's Motion for Sanctions is denied. Enter memorandum opinion and order. *Geraldine Soat Brown*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | | 98 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | 11/1/2002 | |
| | Mail AO 450 form. | | date mailed notice | |
| ✓ | Copy to judge/magistrate judge. | | MW | |
| MW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



TAX TRACK SYSTEMS, CORP., )
      Plaintiff/Counter-defendant, )   **Cause No. 01 C 6217**
           )
v. )   **Judge Robert W. Gettleman**
           )   **Magistrate Judge Geraldine Soat Brown**
NEW INVESTOR WORLD, INC., )
      Defendant/Counter-claimant. )
           )

## <u>MEMORANDUM OPINION AND ORDER</u>

Geraldine Soat Brown, United States Magistrate Judge

      The District Judge has referred this matter for discovery supervision and discovery motions. Presently before the Court is Defendant's Third Rule 37 Motion for Sanctions [dkt 72], and Plaintiff's Motion for Sanctions.[1] After carefully considering the facts and issues, and observating the unfolding of events in numerous hearings on the various motions, for the reasons set out herein, Defendant's motion is granted in part and denied in part. Plaintiff's motion is denied.

## FACTUAL BACKGROUND

      This case involves a six-Count Amended complaint by plaintiff Tax Track Systems Corp. ("Tax Track") against defendant New Investor World ("NIW") alleging, *inter alia*, breach of a confidentiality agreement and misappropriation of trade secrets. Tax Track alleges that it developed an estate planning technique and process for financing the purchase of life insurance "in the least invasive and most tax-efficient manner." (Am. Compl. ¶ 5.) Tax Track calls this process

---

[1] Defendant's Fourth Motion for Sanctions [dkt 92] will be the subject of a further opinion.

1



"Leveraged Life Insurance." (*Id.*) Tax Track alleges that it and NIW entered into a Confidentiality Agreement whereby NIW was granted access to certain confidential information, which Tax Track calls the "Licensed Material." That information included information listed on a schedule appended to the Confidentiality Agreement and "any additional material developed over the course of the Confidentiality Agreement to facilitate the concept of Leveraged Life Insurance and the Licenced Material." (Am. Compl. ¶¶ 9-10.) Tax Track also alleges that NIW agreed not to use any confidential information or the Licensed Material following the termination of the Confidentiality Agreement. Although not alleged in the Amended Complaint, apparently it is undisputed that NIW gave notice on April 4, 2001 to terminate the Agreement with Tax Track. (Tr. Feb. 5, 2002 at 58.)

The District Judge held an evidentiary hearing on Tax Track's motion for a preliminary injunction, at the conclusion of which the motion was denied. (Minute Order of February 5, 2002.) [Dkt 41.] NIW filed a counterclaim on February 28, 2002. [Dkt 46.] Discovery followed, and after one extension, the District Judge ordered a final discovery cut off of September 30, 2002. [Dkt 77.]

Several motions for sanctions have been filed. On April 23, 2002, this Court granted in part Defendant's Second Motion for Sanctions, ordering Tax Track to produce unredacted copies of the confidentiality agreements entered into by Tax Track with other parties, and awarding NIW its attorneys' fees and costs in connection with the second motion for sanctions. [Dkt 61.] Tax Track's objections to that order were overruled on July 30, 2002. On August 5, 2002, NIW filed Defendant's Third Rule 37 Motion for Sanctions ("Def.'s 3rd Mot."). On September 16, 2002, Tax Track filed Plaintiff's Motion for Sanctions ("Pl.'s Mot.") A hearing was held on September 25, 2002, at which this Court entered orders to resolve disputes standing in the way of completing discovery before the cutoff date, and reserved the issue of sanctions for later argument, which was held on October 15,

2002. On October 18, 2002, Tax Track filed a motion for a protective order or to amend the complaint, which was denied at a hearing on October 24, 2002.[2] At that hearing, William Gray, Tax Track's president, appeared to answer personally some of the questions that arose at previous hearings. He had not been ordered to appear.

This opinion will first discuss the factual background of the motions and then discuss the issue of sanctions.

## Defendant's Third Rule 37 Motion for Sanctions.

Defendant's Third Motion for Sanctions claims three areas of discovery abuse: (a) Tax Track's failure to produce all versions of the "gift compression techniques letter"; (b) Tax Track's failure to identify properly potential witnesses properly in compliance with Rule 26; and (c) Tax Track's objections and refusal to respond to NIW's supplemental request for production of documents.

## A. Tax Track's failure to produce all versions of the "gift compression techniques letter."

At the preliminary injunction hearing, Tax Track's president, William Gray testified that a document listed in the Confidentiality Agreement as the "leveraged overview memorandum" is also titled "gift compression techniques" in letters or memoranda. (Tr. Feb. 5, 2002 at 73.) The document is the general explanation of the Tax Track program. (*Id*. at 75.) He testified that it was always confidential. (*Id*.) He further testified that before the gift compression techniques memorandum is disclosed, Tax Track requires a potential licensee to sign a confidentiality

---

[2] Subsequently the District Judge granted a protective order requiring production of the disputed documents but limited to attorneys' eyes only. [Dkt 95.]

agreement. (*Id.* at 70.)[3] When asked whether it was disclosed in some circumstances without the recipient singing a confidentiality agreement, Mr. Gray testified, "Occasionally went to an advisor." (*Id.* at 76.) At the conclusion of the hearing, Tax Track's counsel acknowledged that, "there is an issue that was raised here about where this document [the gift compression techniques memorandum] has actually gone beyond the confines of the people in the confidentiality agreements." However, he argued that Tax Track's disclosure of the gift compression techniques memorandum had been limited so as to not destroy the requisite secrecy. (*Id.* at 112-13.) Thus, the scope of Tax Track's disclosure of the gift compression techniques memorandum to third parties, with or without a confidentiality agreement, was expressly at issue.

One version of the gift compression techniques memorandum was produced prior to the preliminary injunction hearing (bates numbered TT021-028). (Pl.'s Resp. at 1.) No additional versions or copies of the gift compression techniques memorandum were produced until the day before the deposition of William Gray, Tax Track's president. NIW has repeatedly requested information about all of the persons to whom Tax Track provided information that Tax Track now asserts is confidential. Tax Track initially responded that it would only provide that information under certain conditions. *See* Def.'s Interrog. 5 and Pl.'s Answer thereto, served January 5, 2002, attached as Ex. A to Def.'s Reply Support Third Mot. Sanctions ("Def.'s Reply"). Tax Track responded to NIW's Third Motion by saying that it did not understand that NIW wanted *all* versions of the gift compression techniques memorandum. (Pl.'s Resp. at 2.) However, the day before Mr. Gray's July 2002 deposition, Tax Track supplemented its document production with three additional

---

[3] The confidentiality agreements between Tax Track and third parties were the subject of NIW's Second Motion for Sanctions.

copies of the gift compression techniques memorandum, bates numbered TT082 through TT108. Tax Track states that it did so in order to resolve the dispute about whether NIW wanted all of the versions. (Pl.'s Resp. at 4.) At his deposition on July 2, 2002, however, Mr. Gray testified that Tax Track had not produced "every copy and every version of the letter." (Def.'s Mot., Ex. 2, Gray dep. at 103.) Mr. Gray testified that perhaps "dozens" of such letters had been sent. (*Id.* at 123.) NIW's Third Motion argues that in light of these facts, Tax Track should be barred from presenting any claim that the gift compression techniques memorandum or its contents constitutes a trade secret or is otherwise protectible confidential information

In its Response to NIW's Third Motion for Sanctions, Tax Track states, "Defendant has agreed to produce all unredacted copies of the Gift Compression Techniques Memorandum." (Pl.'s Resp. at 4, *see also* Pl.'s Resp. at 5.) Tax Track attached to its Response an August 6, 2002 letter from its counsel to NIW's counsel stating, in part, that Tax Track would "unredact" the three gift compression techniques memoranda produced at Mr. Gray's deposition. (Pl.'s Resp., Ex. 7.)

However, as demonstrated at subsequent hearings, Tax Track is unable to keep either its commitment that it would produce "all unredacted copies of the gift compression techniques memorandum" or even the more modest commitment to produce unredacted copies of the three memoranda produced at Mr. Gray's deposition.

The September 24, 2002 production and the September 25, 2002 hearing.

On September 24, 2002, a month and a half after Tax Track's counsel's August 6, 2002 letter promising the "unredacted" copies of the three gift compression techniques memoranda, and the day before the hearing on NIW's motion in this Court, Tax Track's counsel delivered to NIW's counsel three documents. Tax Track's counsel's cover letter stated, "[E]nclosed are unredacted copies of

5

the Gift Compression Techniques Memorandum/Leverage Overview Memorandum previously produced as Tax Track documents TT-0082-0094 and TT0097-108."[4] However, even a cursory comparison of the documents demonstrates that the unredacted "copies" produced on September 24, 2002 are not the same documents that had been produced in redacted version at Mr. Gray's deposition almost three months earlier. They are totally different documents (although they are versions of the gift compression techniques memorandum), addressed to other persons, with different calculations. This demonstrated that there were more versions of the gift compression techniques memorandum than Tax Track had accounted for, let alone produced. For this reason, and consistent with the representations in Tax Track's Response, Tax Track was ordered on September 25, 2002, to produce immediately to NIW unredacted copies of all versions of the gift compression techniques memorandum. (Minute Order of September 25, 2002.) [Dkt 86.]

The October 15, 2002 hearing.

At that hearing, Tax Track's counsel stated that there might be a problem producing the unredacted versions of TT82-94 and TT97-108. Thus, Tax Track was also ordered to produce to NIW the original redacted versions that were labeled with those bates numbers. (Minute Order of October 15, 2002.) [Dkt 91.] Counsel for both parties also informed the Court that Tax Track had refused to produce versions of the gift compression techniques memorandum created after the filing of the lawsuit. This Court ruled that any objection to producing any gift compression techniques memoranda based on time had been waived.

---

[4] The cover letter and enclosed documents were tendered to the Court at the September 25, 2002 hearing.

The October 24, 2002 hearing.

Prior to the October 24, 2002 hearing, Tax Track produced an unredacted version of one of the three memoranda, TT97-108 (produced unredacted as TT421-432). However, Tax Track's counsel advised NIW's counsel that Tax Track could not produce either the original redacted version or an unredacted copy of TT82-87 or TT88-94. Tax Track also prepared and submitted to the Court affidavits from Mr. Gray stating, in essence, as follows: There was only one copy of those memoranda in Tax Track's files; Mr. Gray redacted the recipient's name from the document before his deposition because the recipient "remains a potential client of Tax Track"; he left the original redacted copy at his office in Minneapolis when he came to Chicago for his deposition; he returned the original redacted copy of the memoranda to Tax Track's file; but he has not been able to locate the redacted copy. As to TT88-94, Mr. Gray was able to state the name of the two individuals to whom he believes that memorandum was sent. As to TT82-87, his best recollection is that it was addressed to a Los Angeles accountant whose first name is George, but whose last name Mr. Gray cannot recall.

As stated above, Mr. Gray attended the October 24, 2002 hearing on Tax Track's motion for a protective order and NIW's Fourth Motion for Sanctions. He came to explain why Tax Track could not comply with the order to produce unredacted copies of all versions of the gift compression techniques memorandum. He stated, on the record, that since originally creating the gift compression techniques memorandum in 1996, the memorandum had gone through various modifications, and over the course of that time he had sent perhaps 600 or 700 copies of that memorandum to various individuals. Some signed confidentiality agreements, some would not sign confidentiality agreements. Mr. Gray would try to get confidentiality agreements, but if he could not,

7

he would send the memorandum anyway. The memorandum was on his computer and his current practice is simply to edit the text to personalize the beginning and the recipient's name, and print it out. He did not keep track of the persons to whom he sent the gift compression techniques memorandum, and it would be impossible at this time to identify all of the persons to whom he sent some version of the memorandum. Thus, Tax Track concludes that it is impossible to comply with the September 25, 2002 order or the October 15, 2002 order.

### B.  Tax Track's failure to identify potential witnesses properly in compliance with Rule 26.

In its Rule 26(a)(1) disclosures on June 14, 2002, Tax Track identified 17 individuals who might have information that might be used to support its claims or defenses. NIW's Third Motion complains of the fact that Tax Track failed to supply any contact information (*e.g.*, address, telephone number) for a number of such persons, for example, "Dan O'Neil, Indiana" and "Scott Beller, Boston Massachusetts." (Pl.'s Mot., Ex. 4 at 2.) Tax Track responds that on August 5, 2002, (the date that NIW filed its Motion), Tax Track supplemented its Rule 26(a)(1) disclosure with all of the information that its investigation had subsequently disclosed. (Pl.'s Resp., Ex. 10.) As to some persons, contact information is now provided. However, as to some of the persons there is still no address or telephone number, for example, the entire listing for Dan O'Neil consists of the following: "Dan O'Neil, Indiana. Mr. O'Neil may have information regarding the relationship between Ash Brokerage, AEGON, Western Reserve Life Assurance Co., Plaintiff Tax Track and Defendant NIW." (*Id*. at 2.) NIW's Third Motion originally requested that Tax Track be required to identify which of those persons whose contact information was provided only in response to the Motion Tax Track plans to call as a witness (for trial or in an affidavit), so that NIW could depose those persons within the remaining time. Tax Track objected to being required to disclose its

witnesses and trial strategy. At the hearing on September 25, 2002, this Court declined to require Tax Track to do so, but observed that it would be very strange if a person for whom Tax Track had no contact information as of the close of discovery (which would mean that Tax Track's agents and counsel had not contacted that person as of the close of discovery) were subsequently called as a witness.

## C. Tax Track's objections to NIW's supplemental request for production of documents.

On June 10, 2002, NIW served Tax Track with Defendant's Second Request for Production of Documents. (Def.'s 3rd Mot., Ex. 7.) NIW's Third Motion states that NIW agreed to extend the time for Tax Track to respond on the express agreement that Tax Track would provide a meaningful response. (Def.'s 3rd Mot. at 6.) NIW complains that, instead of a production of documents, on July 22, 2002, Tax Track served "blanket objections to each and every request and produced no documents." (Id., Ex. 8.) However, after reciting a 20-line "objection" to each category of request, Tax Track also added that, "[s]ubject to and without waiving the foregoing objections, plaintiff will make any additional responsive, non-privileged documents–not related to individual client files–available" at Tax Track's Minneapolis, Minnesota offices. (Def.'s 3rd Mot., Ex. 8.) NIW complains that Tax Track's response was a dilatory tactic and that NIW is prejudiced because it is now precluded from doing any follow up to document production or using the documents in depositions.

Tax Track's Response argues that it has the right under Fed. R. Civ. P. 34 to produce the documents as they are kept in the ordinary course of business. (Pl.'s Resp. at 10.) Tax Track also argues that, given the breadth of the requests, e.g., "all documents used, referred to, or relied upon by plaintiff, its agents and employees . . . in the creation of any documents relating to premium

finance life insurance" (Def.'s Mot., Ex. 7, Def.'s Second Request, Category 5), the only reasonable way to produce the documents is at Tax Track's corporate offices. (Pl.'s Resp. at 11.) Tax Track attaches to its Response a letter dated August 27, 2002 from its counsel to NIW's counsel in which Tax Track's counsel stated:

> My proposal, so the record is clear, was this: if someone from your office wants to come up and "meet and confer" on what exactly you believe falls within the Second Request for Production (Nos. 1-6), we will pay for that person's reasonable airfare and *make available for inspection at Tax Track's corporate offices all of the Company's non-privileged responsive documents for your inspection.* Those that you wish to have produced can then be copied, at defendant's expense. If we are in doubt about whether some particular document(s) are responsive, we can resolve it right there, or at least have a specific area in which we agree to disagree.

(Pl.'s Resp., Ex. 13, emphasis added.) In its Response, Tax Track stated:

> Defendant also takes exception with Tax Track's offer to produce the documents responsive to Defendant's second production request at Tax Track's offices in Minneapolis, Minnesota. . . . Plaintiff Tax Track has complied with Rule 34(b) by making the documents available for inspection as they are kept in the normal court [sic] of business in Minneapolis, Minnesota.

(Pl.'s Resp. at 10.)

At the hearing on September 25, 2002, Tax Track repeated its offer to pay the cost of NIW's counsel's transportation to Minneapolis for the document review, and this Court so ordered, except for documents relating to Tax Track's claimed damages, which were ordered to be produced in Chicago. (Minute Order of September 25, 2002.) Again, the issue of sanctions was reserved.

At the hearing on October 15, 2002, it was revealed that Tax Track had not produced all responsive documents. Rather, Tax Track asserted that it should not be required to produce documents prepared after the filing of the lawsuit because, it argued, production of those documents would injure Tax Track's continuing business efforts. Notably, Tax Track had not moved for any protective order permitting it to withhold documents created after the filing of the lawsuit. Tax

Track's counsel implored the Court for an opportunity to file a motion for a protective order. Thus, Tax Track was ordered to produce any documents required by the September 25, 2002 order no later than October 21, 2002, and file any motion for any protective order relating to any of those documents no later than October 18, 2002 for hearing on October 24, 2002. (As discussed above, any objection to producing gift compression techniques memoranda was held to be waived.) Because discovery is closed and the deadline for filing dispositive motions was at that time only a week away from the scheduled hearing, the order provided: "Any document that the plaintiff is withholding on the basis of its motion for a protective order shall be compiled and housed in plaintiff's counsel's office in Chicago for immediate production upon disposition of the motion for protective order." (Minute Order of October 15, 2002.)

In its Motion for Protective Order, Tax Track sought a protective order providing (a) that Tax Track is not required to produce any documents dated after August 13, 2001 (the date of the filing of the lawsuit), except those relating to completed client insurance cases; (b) that documents created between July 4, 2001 and August 13, 2001 be produced only under an "attorneys' eyes only designation"; and (c) that NIW be required to make a pre-trial showing of need before NIW could use any Tax Track documents dated after July 4, 2001 in any further proceedings. (Pl.'s Mot. Protective Order at 5.) [Dkt 94.] At the hearing on October 24, 2002, Tax Track's motion was denied, both because Tax Track had waived any such limitation on its response to NIW's second request by offering to produce "all responsive documents," and because the nature of the lawsuit that Plaintiff Tax Track filed and the relief sought (including a preliminary and permanent injunction) puts Tax Track's post-lawsuit activities, including but not limited to how it has maintained the

confidentiality of the gift compression techniques memorandum, in issue.[5] Tax Track cannot

preclude NIW from exploring the factual basis for Tax Track's claim that its business will suffer

irreparable ongoing damage if an injunction is not issued. Thus, Tax Track was ordered to produce

the documents immediately. (Minute Order of October 24, 2002.) [Dkt 93.] As noted above, the

District Judge subsequently ordered that the documents be produced limited to "attorneys eyes only"

disclosure. (Minute Order of October 25, 2002.)

Plaintiff's Motion for Sanctions.

Tax Track filed this lawsuit on August 13, 2001. As described above, on February 14, 2002,

after denying Tax Track's motion for a preliminary injunction, the District Judge set a discovery cut

off of August 13, 2002. NIW's counterclaim was filed on February 28, 2002. On June 4, 2002, Tax

Track served NIW with plaintiff's first set of interrogatories and plaintiff's first substantial request

for production of documents. (Tax Track's only prior request, served on December 11, 2001 sought

only one document: a true and correct copy of NIW Executive Summary Premium Financed Life

Insurance memorandum.) In addition to twenty interrogatories, many with multiple subparts, Tax

Track's request for production sought 80 categories of documents, including "Any documents

relating to Leveraged Life Insurance," "Any documents relating to Premium Financed Life

Insurance," "NIW corporate bank statements since the date of its incorporation,"and "Any

---

[5] *See, e.g.*, Amended Complaint ¶ 13: "The confidentiality of the Licensed Material and confidential information was critical to the ability of Plaintiff Tax Track to maintain its competitive edge in the various markets in which it operated." NIW has denied that allegation. (Answer to First Am. Compl. ¶ 13.) Tax Track alleges that it has suffered and will continue to suffer damages from NIW's misappropriation of its trade secrets. (Am. Comp. ¶ 36.) NIW also denies that allegation. (Answer to First Am. Compl. ¶ 36.) NIW also alleges as an affirmative defense that Tax Track disclosed the allegedly confidential information to others without any confidentiality agreement. (*Id.*, Aff. Defense No. 1.)

documents maintained in personal files or working files of the following individuals: Grace Krueger, Daen Wombwell and Ric Martin." (Pl.'s Mot., Ex. 3, Request 1, 2, 76, 80.) NIW requested an extension of time to respond, and Tax Track agreed to allow until July 15, 2002. NIW's answers, objections and responses were served the following day, July 16, 2002. Tax Track argues that, by exceeding the agreed extension, NIW has waived any objections.

On July 17, 2002, the day after NIW served its responses, in the course of responding to a letter from NIW's counsel, Tax Track's counsel wrote that NIW had waived any objections by failing to serve a timely response to discovery. (Pl.'s Mot., Ex. 4 at 2.) He did not raise any other issues with respect to NIW's response. The following day, NIW's counsel responded to Tax Track's counsel's letter, stating, in part:

> As you well know, I advised you on the 15[th] that our discovery would not get out the door until the 16th and you raised no objection. If you are serious in your contention that our objections are not timely under Rule 33, have been waived and desire we file a motion before Judge Brown, please call Dan Noland to discuss the issue as required in local Rule 37.2.

(Def.'s Resp., Ex. 1 at 2.) NIW states that Tax Track never responded to that letter. (Def.'s Resp. at 2.)

As its compliance with Local Rule 37.2's requirement to meet and confer, Tax Track cites its counsel's July 17, 2002 letter, and another letter to NIW's counsel on September 9, 2002 in which Tax Track sought further compliance by September 16, 2002. (Pl.'s Mot. at 1-2, and Ex. 5.)[6] Tax Track's motion further states that on Tuesday, September 10, 2002, Tax Track's counsel had a telephone conference with NIW's counsel, who responded that he would discuss additional

---

[6] As noted on this Court's website, Local Rule 37.2 requires personal consultation. An exchange of letters does not constitute compliance.

compliance with his client. (Pl.'s Mot. at 2.) On Monday, September 16, 2002, Tax Track filed its motion. At that time, Tax Track states, it had not received a response from NIW's counsel. (*Id.*)

NIW states that it faxed a letter on September 17, 2002 that it had been in the process of preparing and that there was a further meet and confer on September 18, 2002, at which NIW agreed to withdraw certain objections and produce additional information and documents, which was confirmed by a letter from NIW's counsel on September 20, 2002. (Def.'s Resp., Ex. 3.) Tax Track confirms that since the filing of Tax Track's motion, NIW has supplemented its document production (Pl.'s Reply at 1), but maintains that NIW has waived all of its objections and should be sanctioned for its tardy response and for what Tax Track claims is intentional concealment of documents. The sanction sought in Tax Track's motion for sanctions is dismissal of NIW's counterclaim as well as fees and costs in bringing the motion. (Pl.'s Mot. at 1-2.)

Tax Track's motion focuses on the following: (a) Request 59 (confidentiality agreements entered into by NIW with other entities); (b) certain notes taken by Grace Krueger, NIW's president at the deposition of Mr. Gray on July 2, 2002; and (c) the addresses and telephone numbers of particular individuals (Hal Parker, Rod Sander, and Mark Wilkinson) listed in NIW's responses to interrogatories. Also, Tax Track argues that NIW's answers to certain interrogatories, in which NIW objected and then provided certain information is a "semantic game." (Pl.'s Mem. Supp. Mot . Sanctions at 5.) In all, Tax Track moved on September 16, 2002, to compel further responses to ten of its twenty interrogatories, and to 27 of its 80 document requests.

As of the filing of Plaintiff's Reply (October 10), the confidentiality agreements had been produced (although Tax Track argues, tardily and with intent to conceal) and the information about the individuals was also provided one day after the filing of the motion for sanctions. (Pl.'s Reply

14

at 8.) Grace Krueger's notes were not produced. Tax Track argues that further responses should be required to Interrogatories 2, 3, 4, 5, 6, 7, 8, 14, and 16, and Document Requests 2, 3, 39, 40, 48, 51, 52, 58, 61 through 70, inclusive, 72 through 77 inclusive, and 80. (*Id.* at 9-15.)

Grace Krueger's Notes.

Apparently Ms. Krueger attended Mr. Gray's deposition on July 2, 2002 and took certain notes relating to his testimony (the "Krueger Notes"). At the end of the deposition, Tax Track's counsel requested that the notes be produced, and NIW's counsel objected to producing them. (Pl.'s Mem Supp. Mot. Sanctions at 3.)

At the conclusion of Mr. Gray's deposition, counsel for both parties called this Court by telephone for a ruling on the Krueger Notes. (Def.'s Resp., Ex. 4, Gray dep at 222-25.) Because the issue did not relate to Mr. Gray's deposition, it was not necessary to resolve that day. Tax Track's counsel said that he was concerned that the notes might disappear and not be fully produced if ordered. (*Id.* at 222-23.) He suggested that NIW's counsel take custody and number the note pages, which NIW's agreed to do. (*Id.* at 222-25.) The following day, Tax Track's counsel wrote to NIW's counsel and stated that the Krueger Notes were responsive to Document Requests 1, 2, and 3 (any documents relating to Leveraged Life Insurance, Premium Life Insurance or Financed Life Insurance), and probably many more because of the scope of Mr. Gray's testimony. (Pl.'s Mot., Ex. 1.) Therefore, Tax Track concluded, no further request was required. (*Id.*) The Krueger Notes are not mentioned in the July 17, 2002 letter from Tax Track's counsel (Pl.'s Mot., Ex. 4), although they are mentioned in his September 9, 2002 letter. (Pl.'s Mot., Ex. 5.)

Tax Track argues that NIW waived any objection by failing to list the notes on a privilege log along with its production of documents on July 17, 2002, and from this Tax Track infers that

NIW "intended to conceal the Krueger notes from discovery." (Pl.'s Mem. Supp. Mot. Sanctions at 4.) NIW argues that it does not view the Krueger Notes as responsive to any discovery request and, therefore, would not be required to list them in a privilege log. Further, NIW states that, in light of the discussion on the record about the notes, the accusation that NIW intended to conceal them is "baseless." (Def.'s Resp. at 5, n.2.)

## ANALYSIS

Legal Standard.

There is no doubt that discovery has a central role in civil litigation in the federal courts. "In our system of civil litigation, the discovery process is the principal means by which lawyers and parties assemble the facts, and decide what information to present at trial." *Danis v. USN Communications, Inc.*, No. 98 C 7483, 2000 WL 1694325 * 1 (N.D. Ill., October 23, 2000)(Schenkier, M.J.). The obligation to respond fully to discovery is enforceable with sanctions.[7] A showing of bad faith is not required for the imposition of sanctions; sanctions may be imposed upon a finding of wilfulness, bad faith, or fault on the part of the noncomplying litigant. *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 671 (7th Cir. 1996). The court is not required to select the least drastic or most reasonable sanction, but the court may only impose sanctions that are

---

[7] Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery of any matter that is relevant to the claim or defense of any party. Rule 37(a)(2)(B) enforces this obligation by providing that if a party fails to answer an interrogatory or fails to permit an inspection, the party seeking that discovery may move to compel that discovery. An incomplete or evasive disclosure, answer or response is to be treated as a failure to respond. Fed. R. Civ. P. 37(a)(3). Upon the granting or denying of such a motion the court shall award the reasonable expenses incurred in bringing or resisting the motion, subject to the standards set out in Rule 37(a)(4). If a party fails to obey an order to provide or permit discovery, more severe sanctions can be entered under Rule 37(b). In addition to the explicit authority set out in Rule 37, the Court has inherent authority to impose sanctions for bad faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

proportionate to the circumstances surrounding the party's failure to comply with the discovery rules. *Id.* at 672.

NIW's Third Motion for Sanctions.

Starting with the easiest part of NIW's Third Motion, relating to Tax Track's claimed failure to disclose information about persons listed in its Rule 26 disclosure, no sanctions are necessary or appropriate at this time. There is no basis to conclude that Tax Track now has further information that was not disclosed. NIW is concerned that persons about whom no contact information was disclosed will subsequently appear as witnesses for Tax Track at trial, in an evidentiary hearing, or in an affidavit submitted by Tax Track in connection with dispositive motions. If Tax Track should attempt to submit evidence by any witness as to which no contact information was disclosed by Tax Track before the close of discovery, Rule 37 (c)(1) provides authority for the trial judge to preclude evidence by such a witness, if appropriate. Tax Track would have to explain why it was substantially justified in not disclosing more information about that witness as a supplement to its Rule 26(a)(1) disclosure during discovery and why that non-disclosure was not harmless. Should this hypothetical situation occur, the ultimate decision belongs to the trial judge. NIW's motion for sanctions on that issue is denied without prejudice to any motion NIW might make under Rule 37(c)(1).

Tax Track's failure to produce all documents sought in NIW's second document request is more complex. When Tax Track's Third Motion was filed, on August 5, 2002, there was a discovery cut off of August 13, 2002, and NIW argued that Tax Track's dilatory response put NIW into a crunch to complete discovery on time. However, Tax Track points out that NIW did not ask for an extension of the discovery cut off, and in fact, NIW opposed Tax Track's motion to extend the cut off. At the September 25, 2002 hearing this Court believed that the issue had been appropriately

17

resolved by adopting Tax Track's offer to pay NIW's expenses to review all responsive documents in Minneapolis. An order embodying Tax Track's offer was entered, except that documents relating to Tax Track's claimed damages were ordered to be produced in Chicago. The subsequent hearings demonstrated that Tax Track did not produce "all" responsive documents, as it had offered and was ordered to do. At the present time, however, after the orders of the District Judge and this Court on October 24 and 25, 2002, the remaining documents have presumably been produced.

The question of what sanctions, if any, would have been appropriate had Tax Track fully produced the documents as required by its offer and the September 25, 2002 order is now irrelevant. Tax Track did not fully comply with the offer it tendered as a basis for denying NIW's motion or even with the Court's order. Tax Track unilaterally decided to exempt from that production documents created after the lawsuit, but did not seek a protective order to permit such an exemption until October 18–after NIW's counsel went to Minneapolis for the production. Therefore, the Court finds that NIW's Third Rule 37 Motion for Sanctions was ultimately justified by Tax Track's actions, and, pursuant to Rule 37(a)(4)(A) and (b)(2), orders Tax Track to pay certain costs and attorneys' fees incurred by NIW in preparing and presenting that motion, as further set out below.

The issue of Tax Track's failure to produce all of the unredacted gift compression techniques memoranda is even more serious. From the previous discussion of the preliminary injunction hearing, it is clear that the extent of Tax Track's disclosure of the gift compression techniques memorandum is a central issue in this case. NIW is entitled to discovery to respond to Tax Track's argument that the disclosure was limited and that Tax Track took reasonable measures to preserve the confidentiality of the gift compression techniques memorandum. In response to NIW's efforts to obtain copies of all of the gift compression techniques memoranda, Tax Track has dribbled

documents and information. For example, Tax Track produced redacted versions of three of the memoranda at Mr. Gray's deposition, but he admitted that those were not all the memoranda. Instead, he testified that "dozens" of such memoranda had been sent. Later he admitted that the number was not dozens, but six or seven hundred, and that he can no longer identify all of the persons to whom they were sent.

One of the on-going battles during discovery in this case has been whether Tax Track may redact from its documents information showing to whom the documents were sent. The importance of producing unredacted documents is illustrated by what happened when Tax Track was ordered to produce the unredacted copies of the three redacted memoranda used at Mr. Gray's deposition. Instead of producing what was ordered, Tax Track produced three *different* gift compression memoranda (and only on the day before the hearing on sanctions), thus demonstrating beyond doubt that it had not produced all such memoranda in its possession. If Tax Track had not been ordered to produce the unredacted versions, it is questionable whether these additional memoranda would ever have been produced.

Significantly, Tax Track's actions suggest that it believes that it is the judge of what it is required to produce, and can redact and "unredact" documents to suit its purposes. In an earlier example of this belief, Tax Track was prepared to offer into evidence at the preliminary injunction hearing unredacted copies of confidentiality agreements, yet it refused to produce unredacted copies of those documents in subsequent discovery. That was the subject of the sanctions entered on NIW's Second Motion for Sanctions. Likewise, according to his own affidavits, Mr. Gray unilaterally redacted *his only copies* of documents produced at his deposition, even after being sanctioned for producing only redacted documents.

It is also significant that Tax Track's actions are contrary to its representations to the Court and to NIW's counsel. Tax Track represented that it had agreed to produce all unredacted copies of the gift compression techniques memorandum. (Pl.'s Resp. at 4.) Yet, its production at Mr. Gray's deposition was only a fraction of all of the versions and copies of the memorandum. Likewise, Tax Track's counsel wrote on August 6, 2002 that it would produce unredacted copies of the three memoranda, and included that representation in its Response (filed on August 29, 2002) to NIW's Third Motion for Sanctions. Yet, the documents purporting to be the unredacted memoranda were not delivered until a month later, less than a week before the close of discovery, and even then they were not as represented. The truth about the redacted memoranda was not forthcoming until after two further court hearings on NIW's Third Motion for Sanctions.

The above discussion illustrates that Tax Track did not provide full and complete responses to NIW's discovery about a central issue of the case. Tax Track was at fault for failing to comply with its discovery responsibilities. Tax Track's actions were certainly at least willful. Accordingly, Tax Track's actions are sanctionable. The only issue is what sanction should be imposed.

NIW seeks an order that Tax Track be barred from presenting any claim that the gift compression techniques memorandum or its contents constitutes a trade secret. The law favors disposition of issues on the merits rather than as a discovery sanction, although dismissal may be ordered in an appropriate circumstance. *Rodriguez v. M&M/Mars*, No. 96 C 1231, 1997 WL 349989 * 2 (N.D. Ill., June 23, 1997)(Gettleman, J.). In light of Mr. Gray's statements on the record at the October 24, 2002 hearing, as well as his affidavits, the order that NIW seeks is likely to be unnecessary. Although Mr. Gray's statements were not made under oath, they were made on the record at a hearing before the Court, for the purpose of inducing the Court to rule in Tax Track's

favor. Because Mr. Gray's testimony at his deposition about the gift compression techniques memorandum was evasive and incomplete in light of his statements on October 24, 2002, Tax Track should be able to use those statements as evidence. Therefore, it is ordered that Mr. Gray's statements at the October 24, 2002 hearing and his affidavits regarding the gift compression techniques memorandum shall be deemed admissions by a party-opponent pursuant to Fed. R. Evid. 801(d)(2) and may be used by NIW as such for any purpose in this lawsuit.[8]

In addition, Tax Track will be required to pay NIW's fees one-half of the time spent at Mr. Gray's deposition and certain time spent in preparing and presenting NIW's Third Motion, as set out further below.[9] That is because Mr. Gray's testimony at his deposition about the gift compression techniques memorandum was not only evasive and misleading but also improperly limited by his unilateral decision to produce only certain memoranda, and those in redacted form, and thus NIW was required to file its Third Motion and to appear at multiple hearings in order to extricate the truth about Tax Track's use of the gift compression techniques memorandum.

The Federal Rules permit the court to impose sanctions on a party, or its counsel, or both. *See* Rule 37(a)(4)(a) and (b)(2). After careful consideration of the facts, this Court will give Tax Track's counsel the benefit of the doubt, and conclude that counsel did not advise the sanctionable conduct and therefore sanctions are imposed on Tax Track and not its counsel. This conclusion is supported by Mr. Gray's testimony at his deposition that it was his "interpretation" that NIW only wanted "representative samples" of the gift compression techniques memorandum. (Def.'s 3rd Mot.,

---

[8] Those statements may be admissible under Rule 801(d)(2) or otherwise even without this order, but this is intended to eliminate any objection to their admissibility.

[9] This is a second and independent basis for the order to pay certain of NIW's fees and costs incurred in connection with the Third Motion.

Ex. 2, Gray dep. at 103.) Likewise, in his affidavits, Mr. Gray admitted that he decided to redact his only copies of the documents produced at his depositions. This Court will not assume that counsel advised him to do so; particularly, this Court will not assume that counsel would represent to the Court and NIW's counsel that unredacted copies would be produced if counsel knew that unredacted copies no longer existed. Furthermore, although Tax Track's counsel represented in its cover letter that the documents delivered to NIW's counsel on September 24, 2002 were unredacted copies of the three memoranda–and they patently were not–Tax Track's counsel appeared genuinely surprised by that revelation at the hearing. This suggests that Tax Track's counsel, having finally gotten some long-promised documents from the client just the day before the hearing, rushed them over to NIW's counsel without carefully reviewing them.

These facts support the conclusion that Tax Track and its president believe that they have the right to determine what Tax Track will produce in response to discovery. These facts suggest that the client, not counsel, has been at fault.

Tax Track's Motion for Sanctions.

Tax Track's motion is entitled "Plaintiff's Motion for Sanctions" but that motion fails to identify any prejudice to Tax Track that would justify the Draconian sanction it seeks: the dismissal of NIW's counterclaim. Indeed, Tax Track's motion, memorandum and reply fail to cite or discuss any authority that would support dismissal in these circumstances. It is hard to avoid the conclusion that Tax Track brought its motion as one "for sanctions" more as a response to NIW's three motions for sanctions than in any genuine belief that the Court would order the dismissal of NIW's counterclaim.

Furthermore, with the exception of the Krueger Notes, the specific materials that Tax Track

22

seeks in its motion were produced by NIW the week following the first real Rule 37.2 conference about Tax Track's requests. The balance of Tax Track's motion seeks to compel responses to interrogatories and document requests that individually and collectively are overbroad, as discussed below.

As a threshold matter, the Court finds that NIW has not waived its objections to Tax Track's interrogatories and document requests. Tax Track does not deny the factual scenario set out in NIW's response: That NIW's counsel advised Tax Track's counsel that the responses due on July 15 would be served the following day, on July 16; that Tax Track's counsel did not object; and that the responses including objections were in fact served on July 16. Particularly in light of the large number of interrogatories and requests to which NIW had to respond, the service of responses with objections on July 16 cannot properly be considered a waiver of those objections.

The Krueger Notes.

This Court has reviewed the Krueger Notes, and denies the motion to compel for a number of reasons. First, the Notes are clearly protected work product and attorney-client privileged. Apparently, instead of whispering in her counsel's ear during Mr. Gray's deposition, Ms. Krueger wrote notes, (e.g., "What does that mean?"), for the obvious purpose of discussing portions of the testimony later with her counsel. The notes fit squarely within the scope of attorney-client privilege.[10]

---

[10] The elements of attorney-client privilege are well established.
(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

23

Secondly, in connection with Tax Track's argument that NIW waived the privilege by failing to include the Krueger Notes on a privilege log, this Court agrees with NIW that the notes are not responsive to any proper document request. Tax Track's claim that they are responsive to Requests 1, 2 and 3, which request "any documents relating to" leveraged life insurance, premium financed life insurance or financed life insurance, amply illustrates the improperly broad scope of those requests. The Krueger Notes do not discuss leveraged life insurance, premium financed life insurance or financed life insurance except insofar as Mr. Gray's testimony related to those topics. Under Tax Track's construction of its document request, any document that relates in any way to the general matter at issue in the lawsuit would be required to be produced or listed on a privilege log. That is clearly too broad, particularly under the scope of Rule 26(b)(1) as amended in 2000.[11] Thus, Tax Track's motion for sanctions is denied insofar as it seeks production of the Krueger Notes.

The balance of Tax Track's Motion for Sanctions relates to NIW's objections to further answers to Tax Track's interrogatories and document requests. As noted above, the 80 categories in Tax Track's document request are, individually and collectively, extremely broad. For example, Tax Track's motion asks the Court to overrule NIW's objections to Request 2, which seeks "any documents relating to Premium Financed Life Insurance" and Request 3, which seeks "any documents relating to Financed Life Insurance." (Pl.'s Mot., Ex. 3.) As discussed above, these requests do not conform to scope of discovery in Rule 26(b)(1). Furthermore, NIW's response to

---

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

[11] Prior to December 1, 2000, Rule 26(b)(1) provided that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . ." Effective December 1, 2000, Rule 26(b)(1) was amended to narrow the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party. . . ."

Request 2 states, "Since the principal focus of NIW's business is to market premium life insurance, this request encompasses every document in NIW's possession touching on that portion of its business, a request that is neither warranted by the issues in this lawsuit nor by the federal rules." (*Id.*) NIW's response to Request 3 is similar. Tax Track's Reply argues that "Defendant has been in business for less than two years," and, therefore, NIW cannot be overly burdened by having to produce all of its documents. (Pl.'s Reply at 13.) The length of time that a party has been in business does not justify requiring it to produce every document that relates to a major portion of its business. The requests are simply overbroad.

The overbreadth of Tax Track's requests is further illustrated by considering the collective effects of Requests 72 ("NIW financial statements for each year since the date of its incorporation"); Request 73 ("NIW corporate tax returns for each year since the date of its incorporation"); Request 74 ("Any documents relating to the income, revenue or commissions received by NIW relating to the sale of Premium Life Insurance"); and Request 75 ("Any documents relating to the income, revenue or commissions received by NIW relating to products *other than* Premium Life Insurance")(emphasis added).

Tax Track's interrogatories are similarly broad, for example, Interrogatory 6 asks: "Identify every individual known to NIW who as knowledge of Financed Life Insurance." (Pl.'s Mot., Ex. 2.)

Tax Track waited four months after the filing of NIW's counterclaim to serve *any* discovery on NIW, and then served these patently overbroad requests. Tax Track further waited until less than a month before the final close of discovery to make any effort to pursue these requests. As NIW points out, Tax Track's motion to extend the discovery cut off date filed on August 23, 2002 did not mention any problem with NIW's response to document requests or interrogatories. (Def.'s Resp.,

25

Ex. 2.) Except for the Krueger Notes, Tax Track has received the documents and information specifically identified in its Motion as significant. There is no basis for compelling NIW to respond further to Tax Track's interrogatories and document requests and certainly no basis for sanctioning NIW for failing to respond further to Tax Track's interrogatories or document requests. Thus, Tax Track's Motion for Sanctions is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Third Rule 37 Motion for Sanctions is granted in part and denied in part. The following sanctions are imposed upon the plaintiff Tax Track:

1. Plaintiff shall pay defendant's costs and attorneys' fees for the following:

a. Two-thirds of the time spent preparing and filing the Third Rule 37 Motion for Sanctions, not including any time for interoffice conferences;

b. Two-thirds of the time attending the Court hearing on September 25, 2002, and all of the time attending the Court hearings on October 15, 2002 and October 24, 2002, not including time to prepare for those hearings; and

c. One-half of the time attending the deposition of William Gray on July 2, 2002, not including time to prepare for that deposition.

2. William Gray's statements at the October 24, 2002 hearing and his affidavits regarding the gift compression techniques memorandum shall be deemed admissions by a party-opponent pursuant to Fed. R. Evid. 801(d)(2) and may be used by the defendant as such for any purpose in this lawsuit. All other sanctions sought by the defendant are denied.

Defendant's counsel shall submit a specification of fees and costs to Plaintiff's counsel by

November 26, 2002. The parties shall follow Local Rule 54.3 (d) through (f) regarding any disputes about the fees and costs.

Plaintiff's Motion for Sanctions is denied.

**IT IS SO ORDERED.**

_Geraldine Soat Brown_
**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED:  November 1, 2002**